UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
FRANCIS X. CAVANAUGH,            )
                                 )
          Plaintiff,             )
                                 )
     v.                          )          Civil Action No. 05-123 (GK)
                                 )
KENNETH L. WAINSTEIN,            )
                                 )
          Defendant.             )
_____)

MEMORANDUM OPINION

Plaintiff, Francis Cavanaugh, seeks the depositions of four United States Department of Justice ("DOJ") attorneys.  He argues that these depositions are vital to a related civil case, Cavanaugh v. Saul, No. 03-111 (D.D.C., filed Jan. 24, 2003) ("Underlying Action"), against members of the Federal Retirement Thrift Investment Board ("Board") for breach of fiduciary duty.  The defendants in that related case have asserted an "advice of counsel" defense, claiming reliance on the advice of, inter alia, the four DOJ attorneys whose depositions Plaintiff seeks.  The DOJ, through Defendant in this case, Kenneth Wainstein,[1] denied Plaintiff's demand to depose those DOJ attorneys.  Defendant based his decision on the grounds that the demand failed to indicate the

_____

[1] Wainstein was sued in his official capacity as United States Attorney for the District of Columbia.  He has since been succeeded by Jeffrey A. Taylor.  The letter denying the demand for depositions was signed by Craig Lawrence ("Lawrence"), Acting Chief of the Civil Division, on behalf of Wainstein.  To avoid confusion, the Court refers to the decision-maker in this case as "Defendant."

relevance of the testimony sought, was duplicative and burdensome, sought testimony protected by the attorney work product and deliberative process privileges, and sought testimony of a high-level government official without the requisite showing of need.

Plaintiff properly challenges Defendant's denial in this Court pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.  He claims that Defendant arbitrarily and capriciously denied his demand.

This matter is before the Court on Plaintiff's Motion for Summary Judgment [Dkt. No. 15], Defendant's Cross Motion for Summary Judgment [Dkt. No. 16], and Defendant's Renewed Motion for Summary Judgment [Dkt. No. 30].  Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons stated below, Plaintiff's Motion for Summary Judgment is hereby **granted in part** and **denied in part**, Defendant's Cross Motion for Summary Judgment is hereby **denied**, Defendant's Renewed Motion for Summary Judgment is **denied**, and Count III of Plaintiff's Amended Complaint is **dismissed** as moot.[2]

## I.   FACTS AND PROCEDURAL HISTORY[3]

Plaintiff filed this suit to challenge Defendant's denial of

_____

[2]   Plaintiff has conceded that Count III of his Amended Complaint is moot. Pl.'s Mot. at 13 n.41.  Accordingly, the Court cannot consider the merits of or grant summary judgment on Count III; the proper disposition is dismissal without prejudice.

[3]  The parties agree that there is no dispute as to the material facts regarding this litigation.

his demand to depose four DOJ Civil Division attorneys: Stuart Schiffer ("Schiffer"),[4] Thomas Bondy ("Bondy"),[5] Michael Hertz ("Hertz"), and Brian Simkin ("Simkin") (collectively, the "DOJ Attorneys").[6]  He sought those depositions in connection with the Underlying Action.

Plaintiff in this case is the named plaintiff in the Underlying Action.[7]  The defendants in the Underlying Action are Andrew Saul, Thomas Fink, Alejandro Sanchez, and Gordon Whiting, who are members of the Federal Retirement Thrift Investment Board. The Board administers the government's Federal Employees' Thrift Savings Plan ("Plan"), a retirement savings plan for current or former United States Government employees and for members of the uniformed services, which was created by the Federal Employees' Retirement System Act ("FERSA"), 5 U.S.C. §§ 8401, et seq.  Also named as defendants in the Underlying Action are Elizabeth

---

[4] Schiffer is a Deputy Assistant Attorney General in charge of the Commercial Litigation Branch of the Civil Division of the DOJ.

[5] Bondy is an attorney on the Appellate Staff of the Civil Division of the DOJ.

[6] Hertz and Simkin are attorneys in the Commercial Litigation Branch of the Civil Division of the DOJ.

[7] Roger W. Mehle ("Mehle") was the original named plaintiff in this action and in the Underlying Action.  Francis Cavanaugh has since replaced Mehle as named plaintiff in both actions.  To avoid confusion, the Court will use the term "Plaintiff" to signify whichever of these two individuals was the named Plaintiff at the time discussed, and will refer to them by their surnames where necessary.

Woodruff, the General Counsel of the Board, and Gary Amelio, the Board's Executive Director.

In the Underlying Action, Plaintiff alleges that Saul, Fink, Sanchez and Whiting breached their fiduciary duties by coercing the resignation of the former Executive Director of the Board and by settling litigation between the Board and American Management Systems, Inc. ("AMS"), a vendor to the Board. Mehle v. American Management Systems, Inc., No. 01-1544 (D.D.C., filed July 17, 2001) ("AMS Action"). Plaintiff, on behalf of the Board, brought a civil suit against AMS in connection with a contract between AMS and the Board that required AMS to provide a record software system. The Board had cancelled the contract prior to its completion, citing numerous problems with timeliness and quality, and subsequently sued AMS for fraud. Outside counsel, principally Gibson, Dunn and Crutcher LLP, also represented the Board in that suit.

The district court in the AMS Action found against Plaintiff and the Board on the question of whether Plaintiff, as the Board's Executive Director, had independent litigating authority to bring suit against AMS without authorization from the DOJ. Mehle v. American Management Systems, Inc., 172 F. Supp. 2d 203 (D.D.C. 2001). Plaintiff, on behalf of the Board, appealed ("AMS Appeal"). The United States intervened in the AMS Appeal to oppose the Board's position that Plaintiff, as the Board's Executive Director, had independent litigating authority. Ultimately, the parties

-4-

dismissed the AMS Appeal by stipulation on August 11, 2003.  In the Underlying Action, Plaintiff claims that this decision to settle the AMS Appeal constituted a breach of fiduciary duty.  He seeks the depositions of the DOJ Attorneys he contends were involved in providing advice to the Board regarding that settlement.

While the AMS Appeal was pending, Saul invited Schiffer to attend a Board meeting scheduled for April 28, 2003.  The Board sought Schiffer's recommendations concerning its future course of action in the AMS Appeal, as well as in a related suit pending against the United States in the U.S. Court of Federal Claims, American Management Systems, Inc. v. United States, No. 01-586C, dismissed per stipulation (Ct. Cl. July 2, 2003) (the "Court of Claims Suit").  At the April 28, 2003 Board meeting, the DOJ Attorneys met in person with members of the Board, as well as its General Counsel and Acting Executive Director.  The meeting was closed to the public.

At the time of the meeting, Bondy represented the United States in the AMS Appeal.  Simkin represented the United States in the Court of Claims Suit.  Woodruff, the Board's General Counsel, had also asked Hertz for advice regarding a counterclaim in the Court of Claims Suit.

In a June 13, 2003 letter to Woodruff, Hertz recommended acceptance of a proposed settlement of the AMS litigations.  On June 16, 2003, in a Board meeting closed to the public, Woodruff

submitted the proposed settlement to the Board and its newly appointed Executive Director, and recommended its acceptance in a memorandum of that date.  On or about June 17, 2003 the Executive Director initiated a telephone conference with Hertz and Simkin regarding the proposed settlement.

On June 20, 2003, in a meeting closed to the public, the Executive Director informed the Board members that he had decided to accept the proposed settlement.  After that meeting, the Executive Director and representatives of AMS and DOJ executed a settlement agreement.

All six defendants in the Underlying Action are represented by attorneys from the Civil Division of the DOJ.  All of those defendants, except for the Board's General Counsel, have indicated their intent to assert an "advice of counsel" defense, including the argument that they relied on the settlement recommendation in Hertz's June 13, 2003 letter.  Neither the DOJ nor the DOJ Attorneys are parties in the Underlying Action.

In connection with the Underlying Action, on December 2, 2004, Plaintiff Mehle submitted to Defendant a demand to take the depositions of the DOJ Attorneys.  Am. Compl. Ex. A.  In his affidavit attached to the demand letter, Mehle specified four subject areas for which he sought testimony: the DOJ Attorneys' (1) interactions and communications with, and their advice to, defendants in the Underlying Action concerning the AMS Appeal and

Court of Claims Suit; (2) negotiations for settlement of the AMS Appeal and Court of Claims Suit; (3) interactions and communications with the Board's private outside counsel; and (4) interactions and communications with each other and others at the DOJ.

In response to the demand, the DOJ initiated an inquiry into the nature of the DOJ Attorneys' involvement in the issues raised in the Underlying Action.  On January 10, 2005, Assistant United States Attorney Alan Burch sent a memorandum ("Burch Memorandum") to Craig Lawrence.  The Burch Memorandum recommended denying the demand for depositions and instead providing a declaration explaining the scope of the advice to the Board and authenticating the transcript of the April 28, 2003 Board meeting and the June 13, 2003 letter to the Board's General Counsel.

Based on the Burch Memorandum, Defendant denied each of the demanded depositions in a January 10, 2005 letter to Mehle ("Denial Letter").  Am. Compl. Ex. B.  The Denial Letter provided the following rationales: (1) Mehle failed to demonstrate the relevance to the advice of counsel defense of three of the four subject areas demanded; (2) the third and fourth subject areas were covered by the attorney work product privilege and the fourth by the deliberative process privilege; (3) Mehle failed to make a sufficient showing of need to require the testimony of Schiffer, a high government official; (4) Bondy only participated in the April

-7-

2003 Board meeting, for which a transcript is available; and (5) Simkin's testimony would be duplicative of the transcript and June 13, 2003 letter.

Instead of the demanded depositions, Defendant provided the declaration of Michael Hertz, whom he identified as the individual who was most informed about DOJ's negotiations with AMS counsel and updates to the Board regarding those negotiations.  He explained in the Denial Letter that "[i]n light of the completeness of the documentary evidence available regarding the legal advice to the Board by DOJ attorneys, release of [the April 28, 2003 transcript, June 13, 2003 letter, and Hertz declaration] should comprehensively respond to your request . . . .  Providing live testimony would therefore be duplicative and unnecessarily burdensome."  Denial Letter at 2.

Plaintiff filed this action nine days later, on January 19, 2005.  He seeks an order setting aside Defendant's denial of the deposition demand as arbitrary and capricious and requiring the DOJ Attorneys to submit to depositions.  He also seeks attorney's fees and costs.  On February 3, 2006, Plaintiff filed an Amended Complaint, which substituted Cavanaugh for Mehle as Plaintiff.

This case is now before the Court on the parties' Cross Motions for Summary Judgment [Dkt. Nos. 15, 16].  Defendant renewed his summary judgment motion after Plaintiff filed the Amended

Complaint [Dkt. No. 30].[8]  No Opposition was filed to the renewed motion.

## II. STANDARD OF REVIEW

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In this case, the parties agree that there are no disputed material facts and the case should be resolved on summary judgment.

The so-called "Federal Housekeeping Statute," 5 U.S.C. § 301, authorizes agencies to issue regulations regarding whether government employees or documents may be subpoenaed from the federal government.  In Touhy v. Ragen, 340 U.S. 462 (1951), the Supreme Court affirmed the principle underlying these regulations, which are commonly referred to as "Touhy regulations."  The DOJ has enacted Touhy regulations pursuant to 5 U.S.C. § 301.  See 28

---

[8] Both parties renewed their summary judgment motions after Plaintiff filed the Amended Complaint.  Because Plaintiff filed his motion as a "Motion to Renew" [Dkt. No. 29], the Court granted that motion; Defendant's "Renewed Motion" [Dkt. No. 30] remains pending, although it simply incorporates the arguments raised in Defendant's initial Motion for Summary Judgment.

C.F.R. §§ 16.21 <u>et</u> <u>seq.</u>

"Under <u>Touhy</u>, neither state-court nor federal-court litigants may obtain a subpoena <u>ad</u> <u>testificandum</u> against an employee of a federal agency that has enacted a <u>Touhy</u> regulation." <u>Houston Business Journal Inc. v. Office of the Comptroller</u>, 86 F.3d 1208, 1212 n.4 (D.C. Cir. 1996) (internal citations omitted).  Rather, a litigant must follow the agency's <u>Touhy</u> regulations to demand the employee's testimony.  Once an agency has refused to produce testimony pursuant to its <u>Touhy</u> regulations, the plaintiff's "sole remedy . . . is to file a collateral action in federal court under the [Administrative Procedure Act ('APA')]." <u>Id.</u> at 1212.

"[T]he federal court will review the agency's decision not to permit its employee to testify under an 'arbitrary and capricious' standard." <u>Id.</u> at 1212 n.4.  Under the APA, an agency's action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "The arbitrary and capricious standard [of the APA] is a narrow standard of review." <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 416 (1971).  In reviewing an agency action, the Court "must consider whether the [agency] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." <u>Id.</u>  This standard presumes the validity of agency action. <u>See</u> <u>Ethyl Corp. v. EPA</u>, 541 F.2d 1, 34 (D.C. Cir. 1976) (en banc).  In particular, "a court is not to

substitute its judgment for that of the agency." Motor Vehicle
Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43
(1983).

Despite this deferential standard, the Court will "intervene
to ensure that the agency has 'examine[d] the relevant data and
articulate[d] a satisfactory explanation for the action.'"
Petroleum Communications, Inc. v. FCC, 22 F.3d 1164, 1172 (D.C.
Cir. 1994) (quoting State Farm, 463 U.S. at 43).  In making its
determination, the reviewing court "must consider whether the
[agency's] decision was based on a consideration of the relevant
factors and whether there has been a clear error of judgment."
Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 378 (1989)
(internal quotations omitted).  "At a minimum, the agency must have
considered all relevant data and articulated an explanation
establishing a 'rational connection between the facts found and the
choice made.'" Aloha Care, Inc. v. Hawaii Dep't of Human Services,
No. 04-498, 2005 U.S. Dist. LEXIS 41202, *24 (D.D.C. June 28, 2005)
(citing Bowen v. Am. Hosp. Ass'n, 476 U.S. 610, 626 (1986)).  Thus,
our Court of Appeals has held that "[w]here an agency has failed to
provide a reasoned explanation, or where the record belies the
agency's conclusion, we must undo its action." Petroleum
Communications, 22 F.3d at 1172 (citing Am. Tel. & Tel. Co. v.
F.C.C., 974 F.2d 1351, 1354 (D.C. Cir 1992)).

## III. ANALYSIS

Plaintiff argues that Defendant's denial of the demand for depositions was arbitrary and capricious in two ways.  First, he claims that Defendant's denial on the basis of relevance and privilege was arbitrary and capricious.  Second, he contends that Defendant failed to follow the DOJ's <u>Touhy</u> regulations in considering the demand for depositions.

### A. Defendant's Denial of Plaintiff's <u>Touhy</u> Demand Covering Three Subject Areas on Grounds of Relevance and Privilege Was Arbitrary and Capricious

The Denial Letter asserted that the following three subject areas for which Plaintiff sought testimony were not relevant to the Underlying Action: the DOJ Attorneys' (a) negotiations for settlement of the AMS Appeal and the Court of Claims Suit, (b) interactions and communications with the Board's private outside counsel, and (c) interactions and communications with each other and others at the DOJ.

Section 16.26(a) of the DOJ's <u>Touhy</u> regulations provides that "[i]n deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider: (1) Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and (2) Whether disclosure is appropriate under the relevant substantive law concerning privilege."  28 C.F.R. § 16.26(a).  In this case, the Underlying Action is governed by the Federal Rules of Civil Procedure, namely Fed. R. Civ. P. 26.  Defendant relied on these

provisions when he denied the demand as to these three of the four demanded subject areas.

### 1. Relevance

In accordance with § 16.26(a)(1), Defendant considered the demand in light of Fed. R. Civ. P. 26(b)(1).  That Rule provides that parties may take discovery "into any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1). "Generally speaking, 'relevance' for discovery purposes is broadly construed."  Food Lion v. United Food & Commer. Workers Int'l Union, 103 F.3d 1007, 1012 (D.C. Cir. 1997).  "[T]he test of relevancy for purposes of discovery under Fed.R. Civ.P. 26(b)(1) is broader than the test for admissibility at trial, as the Rule specifically provides.  Hence, a party may discover information which is not admissible at trial if such information will have some probable effect on the organization and presentation of the moving party's case."  Smith v. Schlesinger, 513 F.2d 462, 473 (D.C. Cir. 1975) (internal citations omitted).

Although the rules of discovery are liberal, discovery is not without any bounds.  Federal Rule of Civil Procedure 26(b)(2)(C) allows for limitation of a discovery request that is "(i) unreasonably cumulative or duplicative, or is obtainable from some

other source that is more convenient, less burdensome, or less expensive . . . [or] (iii) the burden or expense of the proposed discovery outweighs its likely benefit."

The Burch Memorandum acknowledged that information regarding the DOJ Attorneys' legal advice to the defendants "would be relevant to the [Underlying Action]." Burch Mem. at 5. Burch then determined, however, that inquiry into the three additional subject areas was "not appropriate under Rule 26(b)(1) and (b)(2)." Burch Mem. at 5. Specifically, the Burch Memorandum stated that these three areas of inquiry

> do not relate to [Plaintiff's] proffered reason for needing the information. Discussions that the DOJ attorneys had with outside counsel, their negotiations with the AMS counsel, and their internal deliberations with other DOJ officials do not appear to have included the defendants. There is no apparent reason any of this information would be relevant to the defense of reliance on advice of counsel.

Id.

Defendant adopted this reasoning in the Denial Letter. He informed Plaintiff that "[his] request does not explain the need for information about the discussions the DOJ attorneys had with (1) outside counsel to the Board, (2) counsel for AMS regarding settlement with the Board, or (3) other DOJ personnel in internal deliberations." Denial Letter at 1.

Relying on the same relevance rationale, Defendant now argues that inquiry into these subject areas was denied because they do not relate to his proffered reason for seeking the information.

-14-

Def.'s Mot. at 13.  Specifically, Defendant argues that there is no evidence that any communications or information within these three subject areas included the defendants in the Underlying Action or was provided to them.  Accordingly, Defendant contends, none of this information would be relevant to the assertion of the advice of counsel defense by those defendants.

"[O]nce a litigant puts the legal advice given to him at issue, the opposing party should be entitled to all the information on that same subject regardless of when it was compiled."  XYZ Corp. v. United States, 348 F.3d 16, 26 (1st Cir. 2003).  See also Sedillos v. Board of Educ., 313 F. Supp. 2d 1091, 1094 (D. Colo. 2004) (defendant cannot claim reliance on advice of counsel while "prevent[ing] the plaintiffs from exploring fully the substance and circumstances of that advice").

In his demand letter, Plaintiff clearly indicated that he sought depositions on the four subject areas in response to the defendants' assertion of an advice of counsel defense in the Underlying Action.  Am. Compl. Ex. A at ¶ 6.  The relevance of the settlement negotiations to the Fiduciary Defendants' advice-of-counsel defense is obvious: they are claiming that the DOJ Attorneys not only advised them in April 2003 to settle, but also to accept the very settlement that Hertz and Simkin negotiated six weeks later.

Plaintiff's demand letter also clearly indicated that the DOJ

-15-

Attorneys served as counsel to those defendants during the time period at issue in the Underlying Action.  Id. at ¶ 5.  Inquiry into the DOJ Attorneys' conduct of the settlement negotiations, their communications, if any, with the Board's two outside attorneys in advising the Fiduciary Defendants and in negotiating the settlement, and their internal discussions as they did so would elicit testimony from key actors relevant to both the claims and defenses in the Underlying Action.  Whether or not deposition testimony on these subject areas would be admissible at trial is a separate inquiry, and provides no basis for denying discovery into these subjects under Rule 26(b)(1)'s broad standard.

In the face of Plaintiff's explanation, Defendant's denial on the basis of Plaintiff's purported failure to indicate the relevance of the information sought is unreasonable and constitutes a failure to consider the "relevant factors" in this case.  See Marsh, 490 U.S. at 378.  Moreover, the DOJ also serves as counsel to the defendants in the Underlying Action, and is fully aware of the issues in dispute.  The explanation in the Denial Letter turns a blind eye to the obvious relevance, as defined by Rule 26(b)(1), of the three demanded subject areas to the Underlying Action. Accordingly, Defendant's denial of any inquiry into those subject areas was arbitrary and capricious.

### 2.   Privilege

Defendant also based his denial of Plaintiff's demand covering

two subject areas -- DOJ Attorneys' discussions with outside counsel to the Board, and their discussions internally at the DOJ -- on evidentiary privileges.  Specifically, he indicated that both of those subject areas "appear covered, in large part, by the attorney work-product privilege, and the [latter] also by the deliberative process privilege."  Denial Letter at 1.

The purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions.  <u>NLRB v. Sears</u>, 421 U.S. 132, 150 (1975).  Accordingly, the privilege protects the "decision-making processes of government agencies."  <u>Id.</u>  The privilege rests on the "obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government."  <u>Dep't of Interior v. Klamath Water Users Protective Ass'n</u>, 532 U.S. 1, 8-9 (2001) (internal citations omitted).

Plaintiff's demand sought "testimony on the interactions and communications of the DOJ Attorneys with one another and with other employees of the Department of Justice concerning the DOJ Attorneys' interactions and communications with and advice to [defendants in the Underlying Action], and their negotiations of the settlement of both the AMS Appeal and the Court of Claims Suit."  Pl.'s Affidavit at 3, ¶ 10.  This demand on its face

inquires precisely into the "decision-making processes of government agencies" that led to the DOJ Attorneys' advice to the defendants in the Underlying Action.

Plaintiff argues that the privilege does not protect internal DOJ discussions occurring after April 28, 2003, the date the DOJ Attorneys advised the Board regarding the AMS settlement, because those discussions are not predecisional. To the contrary, communications during settlement negotiations by those without ultimate authority to settle are predecisional; the final decision is not made until the settlement agreement is concluded. <u>Murphy v. Tennessee Valley Authority</u>, 571 F. Supp. 502, 505 (D.D.C. 1983) (The plaintiff's assertion that the defendant "made interim decisions while negotiating . . . and therefore that some of the [communications] were 'post-decisional,' represents an artificial effort to segment the continuous process of settlement and lacks support in the record."). Plaintiff concedes that the settlement agreement was not executed until June 20, 2003. Until that time, the internal DOJ deliberations were predecisional and fall within the privilege.

As Plaintiff points out, however, the purpose of the deliberative process privilege is thwarted if it is allowed to shield government misconduct. Pl.'s Mot. at 27. "[W]here there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that

shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." In re Sealed Case, 121 F.3d 729, 738 (D.C. Cir. 1997) (internal quotation marks omitted).  Plaintiff alleges that the DOJ Attorneys had a conflict of interest in advising the defendants in the Underlying Action to settle, and then negotiating the settlement of, an appeal in which DOJ was simultaneously opposing the Board. He claims this conflict "clearly violated the D.C. Bar Rules of Professional Conduct."  Pl.'s Mot. at 27.

Where serious claims of misconduct are alleged, as in this case, the specific facts of the case must be carefully considered to determine if the privilege should apply.  In re Sealed Case, 121 F.3d at 738.  The Court will not evaluate the merits, if any, of those allegations; they were not pled in the Amended Complaint and are beyond the scope of this lawsuit, although they may well be raised in the Underlying Action.

The determinative factor in this analysis, however, is Defendant's failure to consider this issue at all in his response to Plaintiff's demand.  The Denial Letter states simply that the DOJ Attorneys' internal discussions with DOJ personnel "appear covered, in large part, . . . by the deliberative process privilege."  Denial Letter at 1.  This unsubstantiated comment constitutes a failure to "examine the relevant data and articulate a satisfactory explanation for the action," State Farm, 463 U.S. at

43, especially when such serious charges are being made against DOJ lawyers.[9]

Defendant also indicated that the DOJ Attorneys' internal communications as well as their communications with the Board's outside counsel "appear covered" by the attorney work product doctrine.  The work product doctrine protects documents or other information that "can fairly be said to have been prepared or obtained because of the prospect of litigation." Equal Employment Opportunity Comm'n v. Lutheran Soc. Servs., 186 F.3d 959, 968 (D.C. Cir. 1999).  "Like the attorney-client privilege, work product immunity promotes the rendering of effective legal services." In re Sealed Case, 107 F.3d 46, 51 (D.C. Cir. 1997).  Settlement deliberations, such as those between the DOJ Attorneys and the Board's outside counsel or other DOJ personnel in this case, may constitute attorney work product.  See, e.g., Cities Serv. Co. v. FTC, 627 F. Supp. 827, 832 (D.D.C. 1984).  Work product that contains "opinions, judgments, and thought processes of counsel" receives nearly absolute protection from discovery and must be produced only if the party seeking the work product shows an "extraordinary justification." In re Sealed Case, 676 F.2d 793, 809-10 (D.C. Cir. 1982).

---

[9] Defendant also failed to consider the qualified nature of the privilege, namely, that the deliberative process privilege may be overcome by a showing of need. In re Sealed Case, 121 F.3d at 737.

The work product doctrine, however, "'does not give an attorney the right to withhold work product from his own client . . . who presumably paid for and was the intended beneficiary of [the attorney's] labors . . . . Having been hired to serve the client, the attorney cannot fairly be authorized to subvert the client's interests by denying to the client those work papers to which the client deems it necessary to have access." Cobell v. Norton, 213 F.R.D. 1, 12-13 (D.D.C. 2003) (citing Martin v. Valley Nat'l Bank of Arizona, 140 F.R.D. 291, 320 (S.D.N.Y. 1991)).

"When an attorney advises a fiduciary about a matter dealing with the administration of an employees' benefit plan, the attorney's client is not the fiduciary personally but, rather, the trust's beneficiaries." Washington-Baltimore Newspaper Guild, Local 35 v. Washington Star Co., 543 F. Supp 906, 909 (D.D.C. 1982). Although the attorney works directly on behalf of the fiduciary, the fiduciary is not the real client; the intention of the representation is to aid the beneficiaries for whom the fiduciary acts. See id. Courts have expressly applied this principle to actions under ERISA, which establishes similar fiduciary-beneficiary relationships and duties to those established by FERSA. See id. See also Everett v. USAir Group Inc., 165 F.R.D. 1, 5 (D.D.C. 1995).

The "fiduciary exception" provides that "communications between attorneys and clients that are fiduciaries . . . will not

be protected by the attorney-client privilege except 'where [the client-fiduciary] seeks legal advice solely in his own personal interest or where the discovery material has been shown to relate exclusively to non-fiduciary matters.'" <u>Cobell v. Norton</u>, 377 F. Supp. 2d 4, 15 n.8 (D.D.C. 2005) (internal citation omitted). Courts in this jurisdiction and others have applied the exception to attorney work product, as well as to information otherwise covered by the attorney-client privilege. <u>See e.g.</u> <u>Cobell</u>, 213 F.R.D. at 11 ("[I]t is clear that the work product doctrine should not shield documents prepared in order to assist in the administration of [a] trust from the beneficiaries, who are the true client in such an instance."). "[T]he work product doctrine is inapplicable to documents prepared to assist a trustee in its fiduciary capacity." <u>Id.</u>  Where beneficiaries take an adversarial position against a trustee and argue a breach of fiduciary duty, the law in this jurisdiction, as well as others, is clear that the beneficiaries are entitled to the work product of their former counsel. <u>See</u> <u>Everett</u>, 165 F.R.D. at 5.

In this case, the DOJ Attorneys provided advice to the Board defendants in their fiduciary capacities regarding the AMS lawsuits. At the April 28, 2003 Board meeting, Schiffer said that, in negotiating a settlement of the AMS Litigation, "our principal client, our only client . . . [is] the Board and the participants in the plan . . . ." Transcript of April 28, 2003 Board meeting at

81-82, AR at 128-29.  During the time period at issue, the interests of the Board defendants and the Thrift Savings Plan beneficiaries had not yet diverged, so it is correct that the beneficiaries were the DOJ Attorneys' ultimate clients.  Cf. Cobell, 213 F.R.D. at 13 (fiduciary exception may no longer apply once trustee's interest wholly diverges from the interest of the beneficiaries).  A representative of the beneficiaries, Plaintiff, now seeks information about that representation.  Defendant cannot validly assert the work product doctrine against Plaintiff under such circumstances.[10]

Given the complexity of this issue, Defendant's failure to justify invoking work product protection, or to consider the application of the fiduciary exception, constitutes a significant failure to consider the "relevant factors."  Accordingly, the Court concludes that Defendant's finding of work product protection was

_____

[10] Courts are highly sensitive to the protection of opinion work product.  See Office of Thrift Supervision v. Vincent & Elkins, LLP, 124 F.3d 1304, 1307 (D.C. Cir. 1997) ("A party can discover fact work product upon showing a substantial need for the materials and an undue hardship in acquiring the information any other way. Opinion work product, on the other hand, is virtually undiscoverable.").  The Court has found no case law directly addressing the application of the fiduciary exception to opinion work product.  Considering the rationale for the fiduciary exception, however, the Court perceives no justification for different application of the exception to fact versus opinion work product.  If the work product doctrine is inapplicable where the attorney's work is done for the benefit of a plan or trust beneficiary, then it should be equally inapplicable to both fact and opinion work product.  See Cobell, 213 F.R.D. at 13.

arbitrary and capricious.[11]

**B.   Defendant's Denial of Plaintiff's <u>Touhy</u> Demand for Depositions of Hertz, Bondy and Simkin Was Arbitrary and Capricious; Plaintiff Shall Reassess the Necessity for Schiffer's Deposition**

Defendant conceded the relevance of the request for information regarding the DOJ Attorneys' advice to the defendants in the Underlying Action.  Having so conceded, however, Defendant then denied each of the demanded depositions.

**1.   Hertz**

The Burch Memorandum conceded that Hertz took the lead in negotiating the settlement with AMS.  Burch Mem. at 7.  It also explained that Hertz's "contacts with Board officials did nothing to change, alter, or retract any of the legal advice provided at the April [28, 2003] meeting or in the June 13, 2003 letter." Burch Mem. at 7.  Accordingly, Burch reasoned, the transcript of the April 2003 Board meeting and the June 13, 2003 letter capture all relevant advice to the Board and comprise an "'other source that is more convenient, less burdensome, or less expensive' than a deposition." <u>Id.</u> (quoting Fed. R. Civ. P. 26(b)(2)(c)).  Burch

---

[11] Of course, "[t]he Court cannot analyze, in a vacuum, whether communications or documents to which [D]efendant[] might wish to assert a work product privilege warrant protection." <u>Cobell v. Norton</u>, 212 F.R.D. 24, 32 (D.D.C. 2002).  Today's decision holds only that Defendant's across-the-board denial of Plaintiff's demand for deposition testimony regarding the DOJ Attorneys' internal communications or their communications with the Board's outside counsel was, for the reasons discussed above, arbitrary and capricious.

recommended providing a declaration certifying the authenticity of the transcript and letter and representing that they fairly capture the legal advice to the Board defendants regarding the AMS litigation.  Id. at 7-8.

Defendant applied this reasoning to deny Plaintiff's demand for Hertz's deposition and provide his declaration instead. Defendant concluded that the April 28, 2003 transcript and June 13, 2003 letter capture all of the DOJ Attorneys' legal advice to the Board.

A declaration "is simply not an adequate substitute for live testimony," such as a deposition.  Alexander v. FBI, 186 F.R.D. 113, 121 (D.D.C. 1998).  "[S]uch an approach eschews the opportunity for opposing counsel to probe the veracity and contours of the statements.  Furthermore, counsel propounding the . . . question is denied the opportunity to ask probative follow-up questions."  Id.  Our Court of Appeals has emphasized the importance of depositions among the discovery tools available to a litigant.  Founding Church of Scientology v. Webster, 802 F.2d 1448, 1451 (D.C. Cir. 1986) ("Depositions . . . rank high in the hierarchy of pretrial, truth-finding mechanisms.").

In the face of this case law, is it unreasonable to conclude that a declaration would provide an adequate substitute for the type of information Plaintiff sought in his demand.  Accordingly, Defendant's decision to provide Hertz's declaration in place of his

deposition was arbitrary and capricious.

### 2. Bondy and Simkin

Defendant concluded that Bondy had no involvement in advising the Board on the AMS settlement, other than his participation in the April 28, 2003 Board meeting.   Burch indicated that his interviews and review of documents provided no indication that Bondy could give any relevant testimony that would not be duplicative of others' testimony.   Accordingly, Defendant concluded, Bondy "could not provide information in a deposition that would add in any material fashion to the transcript of that same April 2003 transcript [sic] and June 13, 2003 letter." Denial Letter at 2.

Defendant denied Plaintiff's demand for the deposition of Simkin on the ground that it "would be duplicative of the information in the [April 28, 2003] transcript and [June 13, 2003] letter."   Denial Letter at 2.   As with the Bondy denial, Defendant's denial of Simkin's deposition was based on an investigation into Simkin's role in the settlement of the AMS suit. Burch found that Simkin did work with the Board's General Counsel's office on an AMS matter, but his communications with Board employees were very limited and general.   Burch Mem. at 6. Moreover, Burch found that statements made at the April 2003 Board meeting were duplicative of any legal advice he may have provided to the Board about the AMS issues outside of that meeting.

As discussed above, the DOJ's _Touhy_ regulations require the official deciding the demand to consider the rules of procedure governing the case in which the demand arose. 28 C.F.R. § 16.26(a)(1). The Federal Rules of Civil Procedure require, with defined exceptions, discovery of all relevant, non-privileged material. For discovery purposes, relevance is broadly construed. _Food Lion_, 103 F.3d at 1012; _Schlesinger_, 513 F.2d at 473.

A deposition would allow Plaintiff the opportunity to, _inter alia_, determine the full scope of the DOJ Attorneys' representation during the AMS litigations, and to ask follow-up questions about communications, if any, not contained in the document discovery. Bondy and Simkin both were involved in the AMS Appeal, in different capacities. Accordingly, they would each have information relevant to the merits of the appeal and advice to the Board. That such information may be consistent with information provided by the other DOJ Attorneys is not a reasonable basis for denying the depositions pursuant to Rule 26.

The DOJ's _Touhy_ regulations provide for application of the Federal Rules of Civil Procedure to deposition requests. Defendant's failure to consider and apply the standards contained in those rules constitutes a disregard of the "relevant factors." _See_ _Overton Park_, 401 U.S. at 416. Accordingly, the decision to deny Plaintiff's demand for Bondy's and Simkin's depositions on the ground that their information is duplicative was arbitrary and

capricious.

### 3. Schiffer

Defendant concluded that Plaintiff had "not made a sufficient showing of need to require [Schiffer's] testimony" pursuant to case law requiring "extraordinary circumstances" for the testimony of high government executives.[12]  Denial Letter at 1, Burch Mem. at 5, see Simplex Time Recorder Co. v. Sec'y of Labor, 766 F.2d 575, 586-87 (D.C. Cir. 1985) (affirming Administrative Law Judge's striking of top executive department officials from witness list because testimony would be, inter alia, unduly burdensome and "extraordinary circumstances" did not justify calling them to testify).  Defendant further concluded that Schiffer had limited involvement in providing legal advice to the Board on settling with AMS.  Accordingly, Defendant found that Plaintiff had not shown extraordinary circumstances justifying Schiffer's testimony. Denial Letter at 1.  As the Burch Memorandum explained, "[g]iven [Schiffer's] comparatively limited role in the AMS litigation, and the cumulative nature of any relevant information he could produce,

_____

[12] Plaintiff claims that in this APA action, the Court cannot rely on Defendant's post hoc rationalizations of his decisions, including Defendant's separation of powers arguments.  It is true that the Court may not rely on post hoc rationalizations.  See Overton Park, 401 U.S. at 419.  However, Defendant clearly stated in the Denial Letter that he based the decision on the case law requiring "extraordinary circumstances" to justify the testimony of high government executives.  Denial Letter at 1.  This requirement is based on separation of powers arguments, which Defendant fleshes out in his motion papers.  Accordingly, the separation of powers discussion is not a post hoc rationalization.

there does not appear to be anything resembling extraordinary circumstances." Burch Mem. at 6.

Our Court of Appeals in <u>Simplex</u> held that the Administrative Law Judge did not abuse his discretion in denying the plaintiff's deposition request, because he "ha[d] been shown no urgent or proper need to question these officials." <u>Simplex</u>, 766 F.2d at 587. It was reasonable for Defendant to conclude that Schiffer, a Deputy Assistant Attorney General, is a high-level government official. Accordingly, Plaintiff should reassess the necessity for Schiffer's testimony after depositions of the other three DOJ Attorneys.

### C. Defendant Followed the Decision-Making Procedures in 18 C.F.R. § 16.24(c)

Plaintiff also argues that Defendant failed to comply with the DOJ's <u>Touhy</u> regulations setting out the procedure for deciding demands. He claims the following two procedural errors: (1) the wrong official decided his demand, and (2) the DOJ failed to negotiate with him as required by the regulations.

Section 16.24(c) of the DOJ's <u>Touhy</u> regulations sets out the procedures for decision-making in cases where the originating component[13] and the responsible official agree that the response to a <u>Touhy</u> demand should be to authorize testimony or the production

---

[13] The "originating component" is the bureau, division, office or agency of the DOJ in which the person whose deposition is sought is employed. 28 C.F.R. § 16.24(a).

of material from DOJ files.   28 C.F.R. § 16.24(c).[14]   The Burch
Memorandum interpreted this Section to apply "where the originating
component and the responsible official agree that the response
should be to authorize some testimony."   Burch Mem. at 4, AR at 5.

In the Denial Letter, Defendant relied on this section,
indicating, "I am authorized, pursuant to 28 C.F.R. § 16.24(c), to
disclose to you the enclosed declaration of Michael Hertz . . . in
response to your request."   Denial Letter at 1.

Plaintiff protests that § 16.24(c) "says not a word to the
effect that furnishing 'some testimony' to a Touhy requester, i.e.
anything other than the testimony sought, confers final decision-
making authority on the U.S. Attorney."   Pl.'s Mot. at 9 (emphasis

---

[14] Section 16.24(c) provides:

It is Department policy that the responsible official
shall, following any necessary consultation with the
originating component, authorize testimony by a present
or former employee of the Department or the production of
material from Department files without further
authorization from Department officials whenever
possible: Provided, That, when information is collected,
assembled, or prepared in connection with litigation or
an investigation supervised by a division of the
Department or by the [Executive Office for United States
Trustees ("EOUST")], the Assistant Attorney General in
charge of such a division or the Director of the EOUST
may require that the originating component obtain the
division's or the EOUST's approval before authorizing a
responsible official to disclose such information. Prior
to authorizing such testimony or production, however, the
responsible official shall, through negotiation and, if
necessary, appropriate motions, seek to limit the demand
to information, the disclosure of which would not be
inconsistent with the considerations specified in § 16.26
of this part.

in original).  Because the DOJ refused to authorize precisely the
testimony Plaintiff demanded, he contends that it was required to
process his demand pursuant to § 16.24(d).  In this case, according
to Plaintiff, application of that section refers the matter
directly to the Assistant Attorney General for the Civil Division.

"Agency interpretations of their own regulations have been
afforded deference by federal reviewing courts for a very long time
and are sustained unless 'plainly erroneous or inconsistent' with
the regulation." Paralyzed Veterans of Am. v. D.C. Arena L.P., 117
F.3d 579, 584 (D.C. Cir. 1997) (citing Thomas Jefferson Univ. v.
Shalala, 512 U.S. 504, 512 (1994); Bowles v. Seminole Rock & Sand
Co., 325 U.S. 410, 414 (1945)).  "It is sometimes said that this
deference is even greater than that granted an agency
interpretation of a statute it is entrusted to administer." Id.

Defendant's interpretation was far from arbitrary and
capricious.  Nothing in § 16.24(c) expressly establishes that the
decision to "authorize testimony . . . or the production of
material" is contingent on the form of the demand, rather than the
discretion of the DOJ official.  It is true that § 16.24(c) does
not contain the words "some testimony."  Nor does that section
expressly provide that the authorized testimony must be the
"demanded testimony," as Plaintiff's interpretation would have it.
Under the high degree of deference applicable here, the Court
cannot find that this interpretation was "plainly erroneous." Id.

-31-

Plaintiff also contends that the DOJ violated its regulations by neglecting to negotiate with him to limit or clarify his demand in compliance with §§ 16.24(c) or (d)(1)(ii) before denying his demand for all of the depositions.  As discussed <u>supra</u>, Defendant did not apply § 16.24(d) to Plaintiff's demand.  Section § 16.24(c) provides that the responsible official shall authorize testimony or production of material whenever possible, but "[p]rior to authorizing such testimony or production, however, the responsible official shall, through negotiation and, if necessary, appropriate motions, seek to limit the demand. . . ."  28 C.F.R. § 16.24(c).

In his Memorandum of Decision, Defendant, through Craig Lawrence, the Acting Chief of the DOJ's Civil Division, authorized negotiation or motions to limit the scope of the demand.  AR at 1. That Memorandum stated, "[t]o the extent that negotiations and motions practice do not limit the scope of Mr. Mehle's demand, the four DOJ attorneys whose testimony is sought shall respectfully decline to comply with the demand . . . ."  <u>Id.</u>  As discussed above, agency interpretations of their own regulations are accorded substantial deference.  <u>Paralyzed Veterans of Am.</u>, 117 F.3d at 584. Accordingly, this Court defers to Defendant's interpretation of § 16.24(c) to include motions practice, such as the Motion presently before the Court.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary

Judgment [Dkt. No. 15] is **granted in part and denied in part**, Defendant's Motion for Summary Judgment [Dkt. No. 16] is **denied,** and Defendant's Renewed Motion for Summary Judgment is **denied.** Count III of Plaintiff's Amended Complaint is **dismissed** as moot.

    An Order will issue with this Memorandum Opinion.


                                              /s/                           
June 4, 2007                                 Gladys Kessler
                                            United States District Judge


**Copies to**: **attorneys on record via ECF**